IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JENNIFER STEPHENS,  Civil No. 06-1480-AA
                                    OPINION AND ORDER
    Plaintiff,

  vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

---

Max Rae
Attorney At Law
P.O. Box 7790
Salem, Oregon 97303
    Attorney for plaintiff

Karin Immergut
United States Attorney
District of Oregon
Britannia Hobbs
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

Carol Hoch
Special Assistant U.S. Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 901
Seattle, Washington 98104-7075
    Attorneys for defendant

AIKEN, Judge:

    Claimant, Jennifer Stephens, brings this action pursuant to the Social Security Act (the Act), 42 U.S.C. §§ 405(g) and

1 - OPINION AND ORDER

1383(c)(3), to obtain judicial review of a final decision of the Commissioner denying her application for disability insurance benefits under Title II of the Act and for Supplemental Security Income (SSI) disability benefits under Title XVI of the Act. For the reasons set forth below, the Commissioner's decision is reversed and remanded for payment of benefits.

**PROCEDURAL BACKGROUND**

Plaintiff protectively filed her applications for Title II disability insurance benefits and for SSI disability benefits on February 18, 2003. Tr. 55-57, 243-45. Plaintiff's applications were denied initially and on reconsideration. On December 18, 2003, plaintiff appeared with counsel for a hearing before a Administrative Law Judge (ALJ). Tr. 460-92. On April 26, 2004, the ALJ issued a decision in which he held that plaintiff was not disabled. Tr. 256-66. On February 15, 2005, based on plaintiff's request for review, the Appeals Council remanded the case to an ALJ for further development and a new decision. Tr. 277-79. A second hearing was held on October 31, 2005, where plaintiff was present and represented by counsel. Tr. 493-525. On December 12, 2005, the ALJ issued a decision finding plaintiff capable of performing work in the national economy and therefore not disabled within the meaning of the Act. Tr. 22-31. The Appeals Council denied plaintiff's request for review, tr. 7-11, making the ALJ's decision the final agency decision. See 20 C.F.R. §§ 416.1481, 422.210.

**STATEMENT OF THE FACTS**

Plaintiff was born in July 1963, and was 42 years old on the date of the ALJ's decision. Tr. 55, 498. Plaintiff had a

2   - OPINION AND ORDER

high school education. Tr. 30, Finding 9. Plaintiff had past work experience as an administrative assistant and office manager. Tr. 23, 68. Plaintiff alleged disability beginning September 18, 2001, due to major depressive disorder, anxiety, and other mental or emotional difficulties. Tr. 67.

The vocational expert (VE) testified that plaintiff could perform the following jobs that exist in the national economy: janitor, hand packager and small products assembler. Tr. 31, Finding 11.

## STANDARD OF REVIEW

This court must affirm the Secretary's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the Secretary's conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A).

The Secretary has established a five-stepسسsequential process for determining whether a person is disabled. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1502, 416.920. First the Secretary determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. <u>Yuckert</u>, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

In step two the Secretary determines whether the claimant has a "medically severe impairment or combination of impairments." <u>Yuckert</u>, 482 U.S. at 140-41; <u>see</u> 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three the Secretary determines whether the impairment meets or equals "one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity." <u>Id</u>.; <u>see</u> 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Secretary proceeds to step four. <u>Yuckert</u>, 482 U.S. at 141.

In step four the Secretary determines whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, she is not disabled. If she cannot perform past relevant work, the burden shifts to the Secretary. In step five, the Secretary must establish that the claimant can perform other work. <u>Yuckert</u>, 482 U.S. at 141-42; <u>see</u> 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Secretary meets this burden and proves that the claimant is able to perform other work which exists in the

4   - OPINION AND ORDER

national economy, she is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

**DISCUSSION**

At step one of the five step sequential evaluation process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged onset date. Tr. 30, Finding 2. This finding is not in dispute. At step two, the ALJ found that plaintiff had the following severe impairments: major depression and personality disorder. Tr. 30, Finding 3. This finding is not in dispute. At step three, the ALJ found that plaintiff's impairments did not meet or equal the requirements of a listed impairment. Tr. 30, Finding 4. This finding is disputed.

The ALJ determined that plaintiff had the residual functional capacity (RFC) to perform work with no public interaction and "limited" co-worker interaction; and that she had no exertional limitations. Tr. 30, Finding 6. This finding is disputed.

At step four, the ALJ found that plaintiff was unable to perform any past relevant work. Tr. 30, Finding 7. This finding is not in dispute. Finally, at step five, the ALJ found that, based on plaintiff's RFC, she could perform work existing in significant numbers in the national economy; specifically a janitor, hand packager, and small products assembler. Tr. 29-30, Finding 11. This finding is in dispute.

Plaintiff argues that the ALJ failed to properly credit the opinions of Drs. Pitchford, Suckow and Mr. Breyer. While the ALJ's RFC assessment provided for no public interaction and

5   - OPINION AND ORDER

"limited" co-worker interaction, no other restrictions were accepted. Tr. 28, 30. The ALJ gave the following reason for rejecting Dr. Pitchford's further limitations:

> The assessments of Mr. Breyer and Dr. Pitchford are not given controlling weight. They both rely on her subjective complaints to determine disabling features. However, when actually tested the claimant performs well enough to perform simple work.

Tr. 28.

I do not find substantial evidence supporting this basis for failing to fully credit Dr. Pitchford's limitations. Plaintiff was examined by Dr. Pitchford, a psychologist, on May 9 and 12, 2005. Tr. 348-58. Besides an in-depth interview, Dr. Pitchford administered the following tests to plaintiff: MMPI-2 profile, Wechsler Adult Intelligence Scale - III, Wechsler Memory Scale - III, Trial Making Test A, Trail Making Test B, Reitan-Indiana Aphasia Screening test, 21 Item Test, and Memory Malingering Test. Tr. 350-51. Dr. Pitchford's objective findings were as follows: plaintiff's intellectual functioning falls in the low-average range, and memory functioning appears consistent with IQ levels. On the Trail Making Tests her performance ranged from below the 20th percentile to the 40th percentile. The Memory Malingering test is used to measure a person's motivation to put forth their best effort in tests of memory function. Plaintiff's results demonstrated that she was using her best effort to respond to testing. Although, Dr. Pitchford noted that throughout testing, plaintiff appeared "distractible, and confusable." The 21 Item Test revealed a "genuine memory impairment." Finally, the MMPI-2 profile was

6   - OPINION AND ORDER

"valid" and suggested a "chronic mental health problem, a mixed personality disorder, or both." Dr. Pitchford concluded that the "severity of the profile is consistent with [plaintiff's] pathological presentation." Tr. 351. Dr. Pitchford endorsed the following "moderate" impairments: the ability to make judgments on simple work-related decisions; interact appropriately with the public, interact appropriately with supervisors, interact appropriately with co-workers, respond appropriately to work pressures in a usual work setting, and respond appropriately to changes in a routine work setting. Tr. 356. The tests administered by Dr. Pitchford corroborate plaintiff's mental health history, pathology, and limitations as noted by her other providers. The ALJ erred in failing to fully credit these limitations.

Dr. Pitchford's assessment of plaintiff's abilities is supported by her treating physician as far back as 1994, where Dr. Glassman found plaintiff "severely disturbed and emotionally compromised" with "serious, life-threatening psychiatric problems." Tr. 198. Dr. Glass summarized:

> Regarding medical necessity, this patient is a severely disturbed and emotionally compromised individual, with serious, life-threatening psychiatric problems, who likely will be facing repeated hospitalizations, medical/physical problems and medical/physical complications, and ongoing severe dysfunction, without proper treatment[.]
>
> Her psychiatric history has included alcohol dependence; amphetamine abuse; a severe eating disorder with periods of anorexia and bulimia nervosa which has included laxative abuse at times; significant depression with suicidal ideation and self-destructive impulses and acts; a chronic post-traumatic stress disorder related to severe childhood abuse and neglect; dissociative episodes and other complex dissociative symptoms; with a

7 - OPINION AND ORDER

> possible Dissociative Identify Disorder; multiple
> somatic and psychosomatic problems and history
> of medical treatment that is related to her
> complex psychiatric problems.

Tr. 198.

Plaintiff was then able to seek and hold employment for a short time until she used all available sick leave and vacation time, and then took time off without pay due to anxiety, depression, and stress. She was eventually laid off and experienced a "mental breakdown." Tr. 67-68, 464-67, 500-01.

Plaintiff then sought treatment from Marion County Mental Health. Tr. 173-75. She was diagnosed using the DSM-IV[1] with Axis 1 - 296.32 - Major Depressive Disorder, Recurrent, Moderate; and Axis II - Probable - 301.83 - Borderline Personality Disorder. Tr. 175. Plaintiff's Global Assessment of Functioning scores (GAF) were consistently rated at 45 on November 26, 2002, December 23, 2002, and January 21, 2003. Tr. 171-72, 175. A GAF score of 45 indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). On February 13, 2003, plaintiff's GAF dropped to 40 indicating "some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairments in several areas, such as work or school, family relations, judgment, thinking or mood (e.g., depressed man avoids friends, neglects family, and is unable to work . . .)." Tr. 170. On

---

[1] American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders: DSM-IV 30 (4th ed. 1994).

8   - OPINION AND ORDER

April 3, 2003, Cathy Nichols, a mental health nurse practioneer at Marion County Mental Health, dropped plaintiff's GAF score to 20. Tr. 386. That indicated plaintiff was in "some danger of hurting self or others;" "or occasionally fails to maintain minimal personal hygiene;" or "gross impairment in communication[.]" Id.

On May 15, 2003, Dr. Rexin at Marion County Mental Health saw plaintiff and concluded that she was "noticeably depressed," has very poor self esteem, "engages in some distancing and erroneous beliefs, not taking responsibility for her actions; and finally, "I believe she is at risk for further attempts at suicide." Tr. 168. Dr. Rexin also diagnosed plaintiff with major depressive disorder, recurrent, as well as with an Axis II Dependent Personality Disorder. Tr. 169.

Tom Breyer, a mental health nurse practitioner at Marion County Mental Health, began seeing plaintiff on August 4, 2003. Tr. 383. On December 16, 2003, George Suckow, M.D., and Breyer completed a Medical Source Statement quantifying plaintiff's mental residual functional capacities in detail and on a function-by-function basis. Tr. 227-29. The Source Statement addressed many functions not addressed by the ALJ's functional assessments and concluded that plaintiff was significantly more limited than did the ALJ. Id. Notably, the Statement indicated that plaintiff had no ability to maintain attention for extended periods of two hour segments; and only "fair ability"[2] to remember

---

[2] Fair: Substantial loss of ability to perform the named activity in regular, competitive employment and, at best, could do so only in a sheltered work setting where special considerations and attention are provided.

9   - OPINION AND ORDER

work-like procedures, understand and remember very short and simple instructions, carry out very short and simple instructions, maintain regular attendance and be punctual within customary tolerances, sustain ordinary routine without special supervision, work in coordination with or proximity to others without being (duly) distracted by them, get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, and to respond appropriately to changes in a routine work setting. Tr. 227-28. Further, Dr. Suckow and Breyer concluded that plaintiff had between "fair" and "poor/none" ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. Tr. 228. Finally, Breyer and Dr. Suckow indicated that plaintiff's work capacities were "permanent" as opposed to temporary. Id.

On July 22, 2005, plaintiff was again seen at the Marion County Mental Health Clinic. Her GAF continued at 40. There was noted no change in her depression or anxiety, the mental health nurse discussed "crisis plans for possible increased thoughts of self harm or suicidal ideation," and plaintiff was continued on all of her medications. Tr. 414. On September 16, 2005, Dr. Balasubramanian, at Marion County Mental Health, diagnosed major depressive disorder, recurrent; history of anorexia/bulimia; history of psychotic symptoms related to post traumatic stress disorder; and borderline personality traits. Her GAF score was 45. Tr. 413.

I find that the ALJ erred as a matter of law in

10   - OPINION AND ORDER

discrediting the reports and notes of various Marion County Mental Health providers who examined or treated plaintiff. The regulations are instructive in this regard:

> Your level of functioning may vary considerably over time. the level of your functioning at a specific time may seem relatively adequate or, conversely, rather poor. Proper evaluation of your impairment(s) must take into account any variations in the level of your functioning in arriving at a determination of severity over time.

20 C.F.R. Pt. 404, Subpt. P, app. 1 § 12.00(D)(2).

Further, Marion County Mental Health providers were clearly in the best position to know and evaluate plaintiff over time based on her treatment history with them. Regarding the value of a medical source's opinion based on recurring treating contact with a plaintiff:

> [D]epending on the particular facts in a case, and after applying the factors for weighting opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an 'acceptable medical source' if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion.

Social Security Rule 06-03p.

The ALJ improperly discredited the Marion County Mental Health treating source Medical Source Statement. Marion County Mental Health were the providers treating plaintiff. They were in the best position to assess plaintiff's functional limitations. Those limitations should have been accepted by the ALJ.

///

11   - OPINION AND ORDER

Based on these errors, I find that the ALJ's decision was not based on substantial evidence. Further, I find that the ALJ erred in failing to fully credited the assessments of both Dr. Pitchford and Marion County Mental Health regarding plaintiff's capacity for sustained functioning. Moreover, Social Security Ruling 96-8p requires quantification of work related abilities on a function-by-function basis. The ALJ erred in failing to provide the function-by-function consideration of plaintiff's capacities. Finally, the ALJ's RFC assessment is not supported by substantial evidence. Additional functions identified as limited in the medical record should have been included, including the assessments by Dr. Pitchford and Marion County Mental Health.

The Ninth Circuit held:

> [T]he district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).

I find that it is clear from the administrative record that plaintiff cannot sustain full time competitive work, therefore, as a matter of law, the ALJ cannot meet his Step 5 burden.

///
///
///
///
///

12 - OPINION AND ORDER

**CONCLUSION**

The Commissioner's decision is not based on substantial evidence. Therefore, this case is reversed and remanded for payment of benefits.

IT IS SO ORDERED.

Dated this __2__ day of November 2007.

/s/ Ann Aiken
Ann Aiken
United States District Judge